IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TOHEED AHMED,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DENYING § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**<br><br>Case No. 2:22-cv-00212-JNP<br><br>District Judge Jill N. Parrish |

Before the court is a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 filed by Petitioner Toheed Ahmed. ECF 1. For the reasons set forth herein, Mr. Ahmed's motion is DENIED.

## BACKGROUND

In August 2015, Mr. Ahmed was arrested when South Salt Lake City police found cocaine and methamphetamine in his car. *United States v. Ahmed*, 2:16-cr-00021, ECF 136 at 1. At the time, Mr. Ahmed was on parole from two Utah state convictions. *Id.* While the state did not file new charges against him, Mr. Ahmed did admit to technical parole violations. *Id.* Due to this, Mr. Ahmed was placed in state custody. *Id.* at 2. Mr. Ahmed's state custody was purely based on the parole violations, as he had already finished serving out his sentences for the two state convictions. 2:16-cr-00021, ECF 119 at 41:8–20, 44:11–14.

On January 13, 2016, the federal government charged Mr. Ahmed with possession with intent to distribute cocaine and possession with intent to distribute methamphetamine. 2:16-cr-00021, ECF 136 at 2. Mr. Ahmed's state parole revocation hearing was delayed pending the outcome of the federal charges. ECF 1-2 at 1; 2:16-cr-00021, ECF 119 at 48:15–16.

Through a writ of habeas corpus *ad prosequendum*, Mr. Ahmed was later brought into the custody of the U.S. Marshals. 2:16-cr-00021, ECF 136 at 2. At his arraignment, Mr. Ahmed elected to stay in the custody of the U.S. Marshals because he mistakenly believed that this would allow him to receive credit for time served for a yet-to-be-imposed federal sentence. *Id.* The reality, however, was that Mr. Ahmed was simply "on loan" to the U.S. Marshals and was still in primary state custody according to the law. *Id.* Mr. Ahmed eventually learned of this fact and subsequently asked the court to transfer him back into state custody. *Id.* at 3. The motion was granted by the court on May 11, 2016. *Id.*

At the time, Mr. Ahmed's counsel was Audrey James. *Id.* In August 2016, Mr. Ahmed received new counsel, Alexander Ramos. *Id.* Mr. Ramos was joined by Adam Bridge as co-counsel in October 2016. *Id.* at 4.

As Mr. Ahmed's counsel changed, he was also in the process of filing a motion to suppress, arguing that the drugs in his car should be suppressed as fruits of an illegal search. *Id.* at 3. The evidentiary hearing was held in November 2016, with two South Salt Lake City police officers testifying at the hearing. *Id.* at 4. The officials testified as follows:

On the day of the arrest, an officer stopped Mr. Ahmed's car after observing traffic violations. *Id.* As he approached the car, the officer saw Mr. Ahmed in the car with two female passengers, one of whom was "dousing herself in cologne." *Id.* That passenger then tried to exit the car. *Id.* The officer, who recognized the female passenger as a known drug user, told her to stay in the car; she complied. *Id.*

As the officer approached the driver-side widow, Mr. Ahmed rolled up the window and spoke to the two female passengers. *Id.* Mr. Ahmed finished the conversation and then rolled down

the window to speak to the officer. *Id.* Mr. Ahmed told the officer that he had just purchased the car, and he had not yet registered it. *Id.* The officer observed that one of the female passengers was not wearing a seat belt and decided to issue her a citation. *Id.* at 5. When the officer asked for the passenger's name, she gave a false name. *Id.* After learning this, the officer arrested her for providing false information to a police officer. *Id.* It then took the officer almost half an hour to determine the female passenger's actual name. *Id.*

While the first officer was attempting to discern the female passenger's identity, the second officer ran a drug dog around the car. *Id.* The dog alerted to the presence of drugs, and the officers searched parts of the car. *Id.* After discovering drugs, the officers arrested the occupants of the car and obtained a search warrant. *Id.* More drugs were found elsewhere in the car after the car was towed to the South Salt Lake Police Department. *Id.*

After the evidentiary hearing, the parties briefed the motion to suppress. *Id.* In March 2017, the court denied the motion. *Id.* The court held that the traffic stop was justified at its inception and that the officers' actions were reasonably related to the circumstances justifying the stop. *Id.*

After the court denied the motion to suppress, Mr. Ahmed appeared before Magistrate Judge Dustin B. Pead to plead guilty in May 2017. *Id.* at 6. In response to Judge Pead's questioning, Mr. Ahmed stated on the record that his counsel, Mr. Ramos, had been constitutionally effective. *Id.* Mr. Ahmed also stated he had reviewed the plea agreement, that he understood its contents, and that he did not need additional time to review it. *Id.* Mr. Ahmed did not ask about credit for time served. *Id.* at 7. After ensuring that Mr. Ahmed understood the consequences of the plea, Judge Pead asked Mr. Ahmed for his plea. *Id.* Mr. Ahmed pleaded guilty, and Judge Pead accepted the plea. *Id.*

After pleading guilty, Mr. Ahmed met with an officer from Probation and Pretrial Services to provide information for his presentence investigation report. *Id.* The probation officer informed him that he would not receive credit for time served because he pleaded guilty to an offense that carried a mandatory-minimum sentence. *Id.* Mr. Ahmed claims that this was the first time he learned this and that his former counsel did not explain this to him. *Id.*

After the meeting, Mr. Ahmed filed a motion to withdraw his guilty plea. *Id.* Because Mr. Ahmed asserted that his former counsel was ineffective, the court appointed him new counsel, Julie George. *Id.* After two evidentiary hearings, the court denied the motion to withdraw his guilty plea in February 2018. *Id.* at 7–8. The court in part noted that Mr. Ahmed learned he would not receive credit for time served when he was still in the custody of the U.S. Marshals, which led him to request a transfer back to state custody. *Id.* at 13. This fact belied his claim that his plea was not knowing and voluntary due to the time-served issue. The court also found that Mr. Ahmed's counsel met with Mr. Ahmed to explain the plea deal options. *Id.* at 14.

Mr. Ahmed subsequently filed this § 2255 motion. ECF 1. He argues he suffered a violation of his Sixth Amendment right to effective assistance of counsel and a violation of his Fourteenth Amendment right to due process. He argues that (1) his counsel failed to offer exculpatory counsel at the suppression hearing, (2) his counsel failed to challenge the sufficiency of the evidence presented to the grand jury, and (3) the Federal Bureau of Prisons ("BOP") has failed to properly execute his sentence. Accordingly, he seeks a new hearing to suppress or a correction to his time-served credit. Respondent argues each of these claims is without merit.

**LEGAL STANDARD**

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984). "An insufficient showing on either element is fatal to an ineffective-assistance claim . . . ." *Smith v. Duckworth*, 824 F.3d 1233, 1249 (10th Cir. 2016).

To satisfy the first prong, a petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. This is a challenging standard for a petitioner to satisfy, since "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Indeed, there is a strong presumption that "counsel . . . rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010) (internal quotation marks omitted). Thus, "[t]o be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *Id.* (citation modified). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

To satisfy the second prong, a petitioner must show that counsel's deficient performance "actually had an adverse effect on the defense." *Id.* at 693. That is, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

5

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## ANALYSIS

To support the ineffective assistance of counsel claims, Mr. Ahmed argues that (1) his attorney failed to offer exculpatory evidence at the suppression hearing, (2) his attorney failed to challenge the sufficiency of the evidence presented to the grand jury, and (3) his attorney failed to raise the time-served issue on appeal. The court addresses these arguments below.

### A.     Failure to Offer Exculpatory Evidence at the Suppression Hearing

As noted, Mr. Ahmed argues that he was denied effective assistance of counsel because his counsel failed to offer exculpatory evidence at the suppression hearing that would have allegedly undermined the reasonable suspicion basis for extending the traffic stop. ECF 1 at 4–5. He specifically faults his counsel with not having subpoenaed, called, or investigated certain witnesses with exculpatory evidence. *Id.* at 5. He asserts that Nicole Mirey Toledo, his front passenger in the car, would have testified to the events of the traffic stop in an exculpatory fashion for Mr. Ahmed. *Id.* He claims that Toledo would have confessed to owning the drugs[1] and that her testimony would have contradicted the testimony that Mr. Ahmed had engaged in "defiant behavior" by closing his window during the stop. *Id.* To support this assertion, he attaches as an exhibit a declaration by one of the officers that Toledo acknowledged the items found in the trunk and the backpack

---

[1] Mr. Ahmed has previously asserted three theories on how the drugs got into his car: they belonged to either a female passenger, the prior owner of the car, or some unknown person to whom the prior owner loaned the car. 2:16-cr-00021, ECF 136 at 11.

belonged to her. ECF 1-1; ECF 3-2 at 2. He alleges that Brooke Allires, who was the backseat passenger, would have testified similarly. ECF 1 at 5.

In order to establish prejudice from a counsel's failure to investigate and to call witnesses to testify, a movant must "demonstrate, with some precision, the content of the testimony [that witness] would have given at trial." *Martinez v. Tafoya*, 13 F. App'x 873, 877 (10th Cir. 2001) (citing *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990)). Here, Mr. Ahmed asserts that both passengers would have contradicted the officer descriptions of Mr. Ahmed's "defiant behavior." ECF 1 at 5. But Mr. Ahmed attaches no affidavits and provides no support showing that either of the witnesses would have testified in such a way. In fact, as Mr. Ahmed alleges in his petition, Toledo cooperated with the government and testified at the grand jury proceedings in exchange for immunity, at least raising the question if her testimony would have aligned with that of Mr. Ahmed. ECF 1 at 8; *see* 2:16-cr-00021, ECF 133 at 7.

To support his assertion that the witnesses would contradict the officer's testimony, Mr. Ahmed attaches only the officer declaration that states that Toledo initially confessed to owning the drugs. ECF 1-1; ECF 3-2 at 2. But this document does not negate any of the factors actually relied upon to provide a basis for the reasonable suspicion that justified the prolonged stop. In affirming the denial of the motion to suppress, the Tenth Circuit identified those factors as the backseat passenger dousing herself with cologne, Mr. Ahmed's delay in rolling down the window, and the location of the traffic-stop. 2:16-cr-00021, ECF 164 at 7. Thus, Mr. Ahmed has not met his burden of establishing that the testimony of the two witnesses would have likely changed the outcome of the suppression hearing or that he was prejudiced by the absence of the testimony.

He also faults his counsel for failing to subpoena nearby surveillance footage, which would have allegedly shown that the defendant did not roll his window up and that the passengers were wearing seatbelts. ECF 1 at 5. Mr. Ahmed does not specifically point to any actual evidence that would contradict the officers' testimony. Rather he only surmises that such evidence would exist at the nearby storefronts. Again, Mr. Ahmed has not met his burden of establishing that the alleged footage would have likely changed the outcome of the suppression hearing or that he was prejudiced by the absence of it.

Further, it is worth noting that dash cam video from an officer's car showed the scene to at least some degree. 2:16-cr-00021, ECF 76 at 2. Considering this footage in combination with the officers' testimony and the results of discovery, Mr. Ahmed has not shown that his counsels' decision to not pursue the supposed surveillance footage or witness testimony was unreasonable. The court finds that none of these arguments overcomes the strong presumption that the trial counsels' strategic decisions fall within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

In his reply, Mr. Ahmed appears to attempt to shift the basis of his § 2255 petition. He notes that the government wrongly treats his motion as "another motion to suppress the drugs found in his car" and that the government largely avoids discussing the ownership of the drugs, including Toledo's initial confession to owning the drugs. ECF 3 at 1. He asserts that had his counsel investigated the ownership of the drugs, rather than focusing on suppression of the drugs, Mr. Ahmed would have been exonerated. *Id.* at 3.

But, in fact, Mr. Ahmed's § 2255 petition specifically focused on whether his counsel had provided ineffective assistance by not putting forth certain exculpatory evidence that would have

8

resulted in the drugs being suppressed. He also specifically requests a "new evidentiary hearing to suppress evidence." ECF 1 at 13. In any case, Mr. Ahmed has not met the high burden of showing that his counsels' choice to pursue a motion to suppress was unreasonable. Mr. Ahmed has not shown that his counsel pursued the suppression motion at the expense of an investigation into the ownership of the drugs. Rather, it is entirely plausible that counsel, having received the benefit of discovery and aware of Toledo's cooperation with the government, believed it prudent to pursue suppression based on a lack of reasonable suspicion rather than eschewing that strategy to prove alternate ownership of the drugs.

### B.      Failure to Challenge Sufficiency of Grand Jury Evidence

Next, Mr. Ahmed argues that his counsel failed to challenge the sufficiency of the evidence, including the testimony of Toledo, in the grand jury proceedings. ECF 1 at 8. Specifically, he questions why his counsel failed to question the government granting her immunity in exchange for her testimony, especially given the testimony directly contradicted her initial statement that she owned the drugs. *Id.*

Counsel cannot be said to provide ineffective assistance for failing to pursue an option that was never available. The Supreme Court has squarely and repeatedly held that there is no "'authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof.' To the contrary, 'the whole history of the grand jury institution' demonstrates that 'a challenge to the reliability or competence of the evidence' supporting a grand jury's finding of probable cause 'will not be heard.'" *Kaley v. United States*, 571 U.S. 320, 328 (2014) (citation modified). Accordingly,

9

his counsels' supposed failure to challenge the sufficiency of the evidence in the grand jury proceedings was not unreasonable or prejudicial.

### C. Failure to Raise Issues on Appeal and the Fourteenth Amendment Due Process Claim

Mr. Ahmed also argues that the Bureau of Prisons is failing to properly execute his sentence by improperly accounting for time served in state custody. ECF 1 at 6. He alleges that this is both a Fourteenth Amendment due process claim and a Sixth Amendment ineffective assistance of counsel ("IAC") claim. *Id.*

Mr. Ahmed notes that he was arrested on August 26, 2015, for parole violations. While Utah did not file any new charges, his state parole revocation hearing was repeatedly delayed for 34 months pending the outcome of the federal charges. Once the federal sentence was imposed on June 1, 2018, his parole was revoked by the state shortly after, on July 2, 2018, only to be reinstated 43 days later on August 14, 2018. Accordingly, Mr. Ahmed argues that because his parole revocation hearing was delayed due to the federal charges, and he was thus detained for that long a period because of those federal charges, he should receive credit for those months in detention when serving his federal sentence. As he asserts, he "was not serving a state sentence," was "only being detained because of the [f]ederal charges" and will otherwise "be serving 154 months on the 120 month sentence imposed." ECF 1 at 6.

A preliminary consideration here is whether this § 2255 petition is the correct vehicle for this claim. In the government's view, Mr. Ahmed's claim is doubly improper. The government argues a challenge to the Federal Bureau of Prisons' execution of a sentence is properly bought in a § 2241 petition, rather than a § 2255 petition. The government also notes that a § 2241 petition

can only be filed in the court of the district in which the petitioner is incarcerated, and Mr. Ahmed is in custody in Lompoc, California. ECF 2 at 7.

The court agrees with the government's arguments and finds that Mr. Ahmed's due process claim with respect to the execution of his sentence is improper. To challenge the execution of his sentence, a petitioner must file a § 2241 petition, not a § 2255 petition. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) ("Petitions under § 2241 are used to attack the execution of a sentence, in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of a conviction and sentence." (internal citations removed)); *Palma-Salazar v. Davis*, 677 F.3d 1031, 1037 n.2 (10th Cir. 2012) ("This court's precedents . . . indicate the types of claims cognizable under § 2241 are those in which an individual seeks either immediate release from, or a shortened period of, physical imprisonment . . . .").

Any § 2241 petition would have to have been filed in the district of Mr. Ahmed's confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *United States v. Mobarekeh*, 707 F. App'x 561, 562 (10th Cir. 2017) (affirming a district court's dismissal of a § 2241 petition because "jurisdiction over § 2241 applications lies only in the district court for the district of confinement").

But Mr. Ahmed does not only raise a challenge to the execution of his sentence. He also nests this claim within an IAC claim. While Mr. Ahmed does not explain in detail the basis for the supposed IAC claim in his § 2255 petition, he does assert he did not raise the time-served issue

11

because his "counsel chose [the] issues to [a]ppeal." ECF 1 at 7. The court will thus consider this IAC claim as premised on the failure to raise an issue on appeal.

"To succeed on an IAC claim premised on the failure to raise an issue on appeal, a petitioner must show both that (1) appellate counsel performed deficiently in failing to raise the particular issue on appeal and (2) but for appellate counsel's deficient performance, there exists a reasonable probability the petitioner would have prevailed on appeal. . . . [I]n evaluating an argument that appellate counsel performed deficiently in failing to raise an issue on appeal, this court typically 'examine[s] the merits of the omitted issue.' If the omitted 'issue is meritless, its omission will not constitute deficient performance.'" *Davis v. Sharp*, 943 F.3d 1290, 1299 (10th Cir. 2019) (citation modified).

This court has already considered a version of Mr. Ahmed's argument previously. *See* 2:16-cr-00021, ECF 136 at 2–3. As this court stated, "[b]ecause Mr. Ahmed was . . . in primary state custody based on parole violations, the Bureau of Prisons is statutorily prohibited from crediting him the time served on those violations to his . . . federal sentence. *See* 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . *that has not been credited against another sentence.*" (emphasis added))." 2:16-cr-00021, ECF 136 at 2–3. The Utah Criminal Code states that "[a]ny time an individual spends in confinement awaiting a hearing before the Board of Pardons and Parole or a decision by the board concerning revocation of parole constitutes service toward the total sentence." Utah Code Ann. § 76-3-202(6)(c)(i). Here, Mr.

Ahmed's time in custody awaiting his parole revocation hearing, delayed as it was by the federal charges, was credited toward his state sentence.[2]

To be sure, some courts have held that time spent in state custody based on a federal detainer should be credited towards the individual's federal sentence. *See, e.g.*, *United States v. Eidum*, 474 F.2d 579, 581 (9th Cir. 1973). However, this exception has generally been cabined to situations where "the continued state confinement was exclusively the product of such action by federal law-enforcement officials as to justify treating the state jail as the practical equivalent of a federal one." *United States v. Winter*, 730 F.2d 825, 826 (1st Cir. 1984) (quoting *Shaw v. Smith*, 680 F.2d 1104, 1106 (5th Cir. 1982)).

When a state parole board chooses to delay a parole decision because of pending federal proceedings, courts have found there is not "a sufficient connection between the state imprisonment and the federal offense" to credit the time spent to the federal offense. *Winter*, 730 F.2d at 826–27 (holding a state parole board's decision to await a pending federal appeal before making a parole decision did not entitle petitioner to time-served credit). The facts of Mr. Ahmed's case fit squarely into this case law. Mr. Ahmed was not in custody exclusively due to the federal drug charges; he was in custody on different state technical parole violations (associating with a felon, not having a job, and staying out past curfew). 2:16-cr-00021, ECF 136 at 1. The fact that

---

[2] Mr. Ahmed's time with the U.S. Marshals is also considered as time in state custody. When in federal custody pursuant to a writ of habeas corpus *ad prosequendum*, an individual is simply "on loan" to the federal government and is still considered to be in primary state custody according to the law. *See Sinito v. Kindt*, 954 F.2d 467, 469 (7th Cir. 1992).

the Utah parole board delayed its parole revocation decision until the federal charges resolved does not provide a basis for federal time-served credit.

Mr. Ahmed further notes that once his parole revocation hearing did occur, in which his parole was revoked, he soon after had his parole reinstated. He highlights that his parole was reinstated only 43 days after the revocation, perhaps suggesting that his parole violation sentence was much shorter than the 34 months he awaited the parole revocation hearing and that any *excess* time should be credited toward his federal sentence. This argument has likewise been rejected by courts. *See, e.g.*, *Jimenez v. Warden, FDIC, Fort Devens, Massachusetts*, 147 F. Supp. 2d 24, 29 (D. Mass. 2001). In *Jimenez*, for example, the court found that the 21-month period Jimenez spent in custody prior to his parole violation proceeding was credited in full toward his 4-month parole violation sentence, rather than the excess 17 months applying towards his federal sentence. *Id*. The court noted that significant delay in him appearing before the parole board did not "eliminate the requirement" that his release from the parole violation sentence be approved by the state board. *Id*. As applied here, the court finds this reasoning persuasive. Moreover, Mr. Ahmed has not conclusively shown that his parole violation sentence was indeed the 43 days between his parole revocation and parole reinstatement, let alone a shorter period than the 34 months. Mr. Ahmed has "failed to demonstrate his right to relief." *Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007) (faulting a petitioner for not providing support for a claimed 90-day state parole violation sentence when arguing for time-served credit for a federal sentence); *see also Falan v. Gallegos*, 38 F. App'x 549, 552 (10th Cir. 2002) (holding that since a petitioner's time spent in state custody, which was allegedly extended due to a federal detainer, was "*presumably* credited against his state sentence, it cannot qualify under the plain language of 18 U.S.C. § 3585(b)" (emphasis added)).

For all these reasons, the omitted time-served issue Mr. Ahmed asserts in his IAC claim is meritless. But his time-served issue faces yet another impediment. A petitioner challenging his sentence execution must exhaust the administrative remedies available to him before "seeking relief in the district court for sentencing credit." *United States v. Abernathy*, No. 21 CR. 0323 (VM), 2023 WL 6977393, at *2 (S.D.N.Y. Oct. 23, 2023) (quoting *United States v. Martinez*, 19 F.3d 97, 99 (2d Cir. 1994)); *Reed v. United States*, 262 F. App'x 114, 116 (10th Cir. 2008) ("If he is dissatisfied with the result [of BOP's sentencing credit computation], he may seek judicial review after exhausting administrative remedies."). Mr. Ahmed provides no evidence he has exhausted these administrative remedies, beyond asking the court to "fix this matter because the F.B.O.P. will not." ECF 1 at 6. Accordingly, the time-served issue is also procedurally barred.

In sum, because the time-served issue is meritless and procedurally barred, counsel's decision to omit it from the issues raised on appeal cannot constitute deficient performance. Thus, this IAC claim fails as well.

## CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant [seeking relief under § 2255]." USCS Sec. 2255 Proc. R. 11(a). A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the court hereby enters an order adverse to Mr. Ahmed on both procedural and substantive grounds, the substantial showing standard requires a showing "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court denies a certificate of appealability from this order. The conclusion that Mr. Ahmed received effective assistance of counsel is not reasonably debatable. No reasonable juror could find that his counsels' strategic decisions during the motion to suppress were deficient or prejudicial. Further, his claim that his counsel failed to challenge the sufficiency of the grand jury evidence is meritless as a matter of law. Finally, his claim that his counsel failed to raise certain issues on appeal is also meritless and procedurally barred.

## CONCLUSION

For the above-stated reasons, the court **DENIES** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, ECF No. 1. The court also **DENIES** a certificate of appealability from this order.

DATED September 29, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge